UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

_____

DIANE E. MCCAULEY,

                                                                                              **REPORT AND**
                                                                                              **RECOMMENDATION**

                          Plaintiff,
                                                                                              08-CV-0067
                                                                                              (FJS/VEB)

                  V.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

                          Defendant.

_____

## I. INTRODUCTION

In April of 2005, Plaintiff Diane McCauley filed an application for Disability Insurance

Benefits ("DIB") under the Social Security Act.  Plaintiff alleges that she is unable to work

since January 27, 2004, due to a left knee impairment and a heart impairment. The

Commissioner of Social Security denied Plaintiff's application.

Plaintiff, through her attorneys, Olinsky & Shurtliff, commenced this action on

January 18, 2008, by filing a Complaint in the United States District Court for the Northern

District of New York. (Docket No. 1).  Plaintiff seeks judicial review of the Commissioner's

denial of benefits pursuant to 42 U.S.C. §§ 405 (g) and 1383 (c)(3).

On September 16, 2009, the Honorable Norman A. Mordue, Chief United States

District Judge, referred this case to the undersigned for a Report and Recommendation

pursuant to 28 U.S.C. § 636(b)(1)(A) and (B). (Docket No. 17).

## II. BACKGROUND

The relevant procedural history may be summarized as follows:  Plaintiff filed an application for DIB on April 7, 2005, alleging disability since January 27, 2004. (T at 26, 380, 382, 387).[1]  The application was denied initially on June 3, 2005.  (T at 26).   Plaintiff requested a hearing before an ALJ. (T at 42).  On January 23, 2007, Plaintiff appeared, along with her attorney, and testified at a hearing conducted in Syracuse, New York, before ALJ Michael Brounoff. (T at 417).  At this hearing, Plaintiff amended her alleged onset date to May 22, 2005.  (T at 422, 426).  Plaintiff appeared again at a supplemental hearing held on May 3, 2007, in Syracuse before ALJ Brounoff for the purpose of obtaining the testimony of a vocational expert.  (T at 390, 392). On August 31, 2007, ALJ Brounoff issued a written decision denying the application for benefits.  (T at 26-34). The ALJ's decision became the Commissioner's final decision on January 9, 2008, when the Appeals Council denied Plaintiff's request for review.  (T at 6-8).

Plaintiff, through counsel, commenced this action on January 18, 2008. (Docket No. 1).  The Commissioner interposed an Answer on May 5, 2008. (Docket No. 8).  Plaintiff filed a supporting Brief on July 18, 2008. (Docket No. 11).  The Commissioner filed a Brief in opposition on August 11, 2008. (Docket No. 14).

Pursuant to General Order No. 18, issued by the Chief District Judge of the Northern District of New York on September 12, 2003, this Court will proceed as if both parties had

---

[1]Citations to "T" refer to the Administrative Transcript.  (Docket No. 7).

accompanied their briefs with a motion for judgment on the pleadings.[2]

For the reasons that follow, it is respectfully recommended that this case be remanded to the Commissioner for further proceedings.

### III. DISCUSSION

**A.    Legal Standard**

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir.1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence. Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir.1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); see Grey v. Heckler, 721 F.2d 41, 46 (2d Cir.1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir.1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971). Where evidence is deemed susceptible to more than

---

[2]General Order No. 18 provides, in pertinent part, that "[t]he Magistrate Judge will treat the proceeding as if both parties had accompanied their briefs with a motion for judgment on the pleadings."

one rational interpretation, the Commissioner's conclusion must be upheld. See Rutherford

v. Schweiker, 685 F.2d 60, 62 (2d Cir.1982).

If supported by substantial evidence, the Commissioner's finding must be sustained

"even where substantial evidence may support the plaintiff's position and despite that the

court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado

v. Sullivan, 805 F.Supp. 147, 153 (S.D.N.Y.1992). In other words, this Court must afford

the Commissioner's determination considerable deference, and may not substitute "its own

judgment for that of the [Commissioner], even if it might justifiably have reached a different

result upon a de novo review." Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037,

1041 (2d Cir.1984).

The Commissioner has established a five-step sequential evaluation process to

determine whether an individual is disabled as defined under the Social Security Act. See

20 C.F.R. §§ 416.920, 404.1520. The United States Supreme Court recognized the validity

of this analysis in Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S.Ct. 2287, 96 L.Ed.2d

119 (1987), and it remains the proper approach for analyzing whether a claimant is

disabled.[3]

---

[3]This five-step process is detailed as follows:

First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.

If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities.

If the claimant has such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations.

If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform

While the claimant has the burden of proof as to the first four steps, the Commissioner has the burden of proof on the fifth and final step. See Bowen, 482 U.S. at 146 n. 5; Ferraris v. Heckler, 728 F.2d 582 (2d Cir.1984).

The final step of the inquiry is, in turn, divided into two parts. First, the Commissioner must assess the claimant's job qualifications by considering his or her physical ability, age, education, and work experience. Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform. See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. §§ 416.920(g); 404.1520(g); Heckler v. Campbell, 461 U.S. 458, 460, 103 S.Ct. 1952, 76 L.Ed.2d 66 (1983).

## B.    Analysis

### 1.    Commissioner's Decision

The ALJ found that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2009.  (T at 28).  The ALJ also found that Plaintiff had not engaged in substantial gainful activity since November 21, 2004(T at 28).  The ALJ determined that Plaintiff had the following impairments considered "severe" under the Act: localized osteoarthritis of the left knee status-post surgical intervention, heart valve disease

---

substantial gainful activity.

Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work.

Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir.1982) (per curiam); see also Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir.1999); 20 C.F.R. §§ 416.920, 404.1520.

status- post aortic valve replacement, and minimal obstructive lung defect. (T at 28).

However, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that meets or medically equals one of the listed impairments found in 20 CFR Part 404, Subpart P, Appendix 1 (the "Listings"). (T at 29).   The ALJ found that Plaintiff retained the residual functional capacity ("RFC") to perform a "usefully full range of light work."  (T at 29).   The ALJ determined that she can lift/carry twenty (20) pounds occasionally and ten (10) pounds frequently, sit a total of six (6) hours in an eight (8) hour workday. (T at 29).   The ALJ also found that Plaintiff can stand/walk for a total of six (6) hours, with occasional crouching, kneeling, or crawling, and advisable avoidance of respiratory irritants, temperature extremes and dampness.  (T at 29).

The ALJ determined that Plaintiff is capable of performing her past relevant work as a sales attendant, a cashier, a deli slicer, or a donut fryer.  (T at 33).  As such, the ALJ found that Plaintiff has not been under a disability, as defined under the Act from May 21, 2005, to the date of the ALJ's decision. (T at 33).

As noted above, the ALJ's decision became the Commissioner's final decision on January 9, 2008, when the Appeals Council denied Plaintiff's request for review.  (T at 6-8).


### 2.    Plaintiff's Claims

Plaintiff contends that the Commissioner's decision should be reversed.  Plaintiff offers three (3) principal arguments in support of her position.  First, Plaintiff asserts that the ALJ failed to properly apply the "treating physician rule." Second, Plaintiff argues that the ALJ's RFC finding was not supported by substantial evidence.  Third, Plaintiff argues

that the ALJ erred by determining that she could perform her past relevant work.  These arguments will be addressed in turn.

### a.      Consideration of Treating Sources's Opinions

Under the "treating physician's rule," the ALJ must give controlling weight to the treating physician's opinion when the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record." 20 C.F.R. § 404.1527(d)(2); Halloran v. Barnhart, 362 F.3d 28, 31-32 (2d Cir. 2004); Shaw v. Chater, 221 F.3d 126, 134 (2d Cir.2000).[4]

Even if a treating physician's opinion is deemed not to be deserving of controlling weight, an ALJ may nonetheless give it "extra weight" under certain circumstances.  In this regard, the ALJ should consider the following factors when determining the proper weight to afford the treating physician's opinion if it is not entitled to controlling weight: (1) length of the treatment relationship and the frequency of examination, (2) nature and extent of the treatment relationship, (3) supportability of opinion, (4) consistency, (5) specialization of the treating physician, and (6) other factors that are brought to the attention of the court. C.F.R. § 404.1527(d)(1)-(6); see also de Roman, 2003 WL 21511160, at *9; Shaw, 221 F.3d at 134; Clark v. Comm'r of Soc. Sec., 143 F.3d 115, 118 (2d Cir.1998).

In this case, Plaintiff asserts that the ALJ failed to give proper weight to the opinion of her treating physician, Dr. Norman Lasda.  In May 2007, Dr. Lasda completed a Physical Medical Source Statement, in which he indicated that he had been treating Plaintiff on a

---

[4]"The 'treating physician's rule' is a series of regulations set forth by the Commissioner in 20 C.F.R. § 404.1527 detailing the weight to be accorded a treating physician's opinion." de Roman v. Barnhart, No.03-Civ.0075, 2003 WL 21511160, at *9 (S.D.N.Y. July 2, 2003).

monthly basis for approximately five (5) months.  (T at 387).  Dr. Lasda opined that Plaintiff could walk only ½ of a city block without rest or severe pain, that she could stand/walk less than two hours in an 8-hour working day, and stand for twenty minutes before needing to sit down, walk around, etc. (T at 388).  Further, Dr. Lasda indicated that Plaintiff would need to walk around every thirty minutes during an 8-hour working day for approximately six minutes at a time. (T at 388).  According to Dr. Lasda, Plaintiff would need to shift at will from sitting, standing or walking and would need to be permitted to take unscheduled breaks 3-4 times during an 8-hour work day. (T at 388).  Dr. Lasda indicated that Plaintiff could never twist, stoop (bend), crouch/squat, climb ladders, or climb stairs. (T at 389).

The ALJ referenced Dr. Lasda's assessment, noting that it supported "a largely credible increase in left leg symptoms," which made Dr. Lasda's findings "persuasive." (T at 30).  The ALJ also indicated that he believed the increase "came into effect about March 13, 2007." (T at 30).  However, the ALJ noted that Dr. Lasda had "failed to venture an estimate as to how long [Plaintiff's] limitation might continue." (T at 31).  The ALJ referenced the fact that the "record was held open for any additional information that might have been forthcoming from Dr. Lasda," but that no assessment had been provided from Dr. Lasda concerning how long Plaintiff's limitation might be expected to continue. (T at 31). The ALJ also noted that surgery was planned to address the condition. (T at 32).  As such, although the ALJ indicated that Plaintiff's residual functional capacity had been reduced to less than the level of light work starting in March 2007, he found that she had not established that "these exacerbated symptoms and resulting limitations have lasted or are expected to last for 12 months." (T at 32).

Plaintiff argues that Dr. Lasda's assessment was entitled to controlling weight and

that the ALJ erred by failing to re-contact Dr. Lasda and obtain his assessment regarding the anticipated length of the limitations.

The ALJ has an "affirmative duty to develop the record and seek additional information from the treating physician, *sua sponte*, even if plaintiff is represented by counsel" to determine upon what information the treating source was basing his opinions. Colegrove v. Comm'r of Soc. Sec., 399 F.Supp.2d 185, 196 (W.D.N.Y.2005); see also 20 C.F.R. §§ 404.1212(e)(1), 416.912(e) (1) ("We will seek additional evidence or clarification from your medical source when the report from your medical source ... does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques."). Failure to re-contact is error. See Taylor v. Astrue, No. CV-07-3469, 2008 WL 2437770, at *3 (E.D.N.Y. June 17, 2008) (finding it error for the ALJ to not re-contact Plaintiff's treating physician when he determined that the physician's opinion was "not well-supported by objective medical evidence").

Defendant argues that the ALJ was not obligated to re-contact the ALJ because (a) Dr. Lasda's opinion was inconsistent with other evidence in the record, including Plaintiff's own statements; (b) Dr. Lasda was given the opportunity to opine regarding Plaintiff's condition, but never indicated that her impairment would continue for twelve months, (c) the ALJ was able to make a decision based on the evidence of record, and (d) Plaintiff's counsel failed to obtain complete information.

This Court finds these arguments unavailing for the following reasons.  First, contrary to Defendant's suggestion, the ALJ did not conclude that Dr. Lasda's opinion was inconsistent with other evidence in the record.  In fact, the ALJ specifically credited Dr. Lasda's assessment and found that it indicated a worsening of Plaintiff's impairment.  (T

at 30).  The ALJ noted that he was "inclined to accept" Dr. Lasda's assessment with regard

to the worsening of symptoms beginning in March of 2007. (T at 32).  The ALJ did not deny

Plaintiff's claim because he rejected Dr. Lasda's findings or found them inconsistent with

the record.  Rather, he found that Dr. Lasda's assessment, without more, did not establish

the duration requirement set forth in 20 C.F.R. §404.1509 ("Unless your impairment is

expected to result in death, it must have lasted or must be expected to last for a continuous

period of at least 12 months. We call this the duration requirement.") (T at 32).

Second, the ALJ noted that Dr. Lasda did not "venture an estimate as to how long

such limitation might continue." (T at 31).  This is a correct statement, but ignores the fact

that Dr. Lasda was asked to complete a form Physical Medical Source Statement *that did*

*not ask* for his opinion concerning the duration of Plaintiff's limitations. (T at 387-89).  Thus,

the fact that Dr. Lasda did not "venture" an estimate as to duration can scarcely be

considered probative.  Moreover, it bears noting that Dr. Lasda *did* opine that Plaintiff's

prognosis was "poor/fair." (T at 387).  At a minimum, this is suggestive of continued (or

even worsening) limitations consistent with his overall assessment.

Third, the ALJ was not able to make a decision based upon the record as it existed.

The ALJ concluded that Dr. Lasda had offered credible findings to the effect that Plaintiff's

symptoms had worsened and that her limitations had increased.  It appears that the ALJ

would have found this assessment controlling, but for the fact that Dr. Lasda had not

addressed the duration requirement.  However, this information was readily accessible –

Dr. Lasda could have been asked a single question, *i.e.* whether he believed the limitations

identified in his statement were expect to last for a continuous period of at least twelve (12)

months.  Under the circumstances, the ALJ was obligated to obtain that information.  20

C.F.R. §404.1512(e) ("When the evidence we receive from your treating physician . . . is inadequate for us to determine whether you are disabled, we will need additional information to reach a determination or a decision. To obtain the information, we will take the following actions . . . [w]e will first recontact your treating physician . . . to determine whether the additional information we need is readily available.").  In addition, the ALJ referenced the fact that Dr. Lasda planned surgery to address Plaintiff's knee issue. (T at 30, 32). Presumably, the ALJ referenced the surgery to imply that Plaintiff's symptoms would improve in this future.  This suggestion is unavailing in that it is based upon mere conjecture by the ALJ, rather than actual medical evidence or opinion.  This is particularly true given Dr. Lasda's assessment that Plaintiff's prognosis was "poor/fair."

Lastly, this Court is troubled by the apparent lack of diligence on the part of Plaintiff's counsel.  When asked by the ALJ whether the record needed to be held open for the submission of additional material concerning Plaintiff's knee, counsel responded: "No, I think that it's all here in these reports already." (T at 422).  The Medical Source Statement completed by Dr. Lasda was only obtained because the ALJ noted that Lasda, Plaintiff's treating orthopedist, had not completed such a statement prior to the hearing. (T at 466, 471).  Plaintiff's counsel apparently obtained the statement thereafter and submitted it as part of the record.  (T at 387-89).  Upon receiving and reviewing the statement, one would expect that counsel would have arrived at the same conclusion that the ALJ did – namely, that Dr. Lasda's assessment indicated a worsening of symptoms, but did not address how long that condition was expected to last – and followed up with Dr. Lasda to fill in that gap. At the very least, having read the ALJ's decision, one would expect counsel to have obtained Dr. Lasda's opinion regarding duration and submitted it to the Appeals Council.

11

However, it is well-settled that the ALJ's obligation to develop the record exists even where, as here, the claimant is represented by counsel. See, e.g., Colegrove v. Comm'r of Soc. Sec., 399 F.Supp.2d 185, 196 (W.D.N.Y.2005) (noting that ALJ has an "affirmative duty to develop the record and seek additional information from the treating physician, *sua sponte*, even if plaintiff is represented by counsel"); Perez v. Chater, 77 F.3d 41, 47 (2d Cir. 1996) ("Because a hearing on disability benefits is a non-adversarial proceeding, the ALJ generally has an affirmative obligation to develop the administrative record. This duty exists even when the claimant is represented by counsel . . . .").

Because this Court finds that the ALJ did not fulfill this obligation by obtaining readily accessible follow-up information, a remand is necessary, notwithstanding any responsibility Plaintiff's counsel may have in terms of the failure to fully develop the record.  However, consideration should be given to the diligence of Plaintiff's counsel in this regard in the event that a request for attorneys' fees is made.  See Bryant v. Apfel, 37 F. Supp.2d 210, 214 (E.D.N.Y. 1999)(noting awarding attorneys' fees when remand results from counsel's failure to develop the record "create a perverse incentive for a plaintiff's counsel to fail to develop the record at the administrative appeals level and before the district court if he or she has any doubt whether the additional records will support the client's claim").

Accordingly, this Court recommends that this matter be remanded for further proceedings.  Specifically, the Commissioner should re-contact Dr. Lasda to determine whether the limitations noted in his Medical Source Statement were expected to last a continuous period of at least twelve months. See  Butts v. Barnhart, 388 F.3d 377, 385 (2d Cir. 2002) ("Sentence four of Section 405 (g) provides district courts with the authority to affirm, reverse, or modify a decision of the Commissioner 'with or without remanding the

case for a rehearing.'")(quoting 42 U.S.C. § 405 (g)); <u>Kirkland v. Astrue</u>, No. 06 CV 4861, 2008 WL 267429, at *8 (E.D.N.Y. Jan. 29, 2008) (noting that is "appropriate where, due to inconsistencies in the medical evidence and/or significant gaps in the record, further findings would . . . plainly help to assure the proper disposition of [a] claim").

In light of the foregoing, it is not necessary to address Plaintiff's challenges to the ALJ's residual functional capacity determination and his conclusion that Plaintiff could perform her past relevant work.  These findings may very well be impacted (and at the very least must be re-evaluated) in light of the additional information to be obtained from Dr. Lasda.

### IV. CONCLUSION

For the foregoing reasons, it is respectfully recommended that Defendant's Motion for Judgment on the Pleadings be DENIED, that the decision of the Commissioner be reversed, and that the case be remanded to the Commissioner pursuant to sentence four of 42 U.S.C. § 405 (g) for further administrative proceedings consistent with this Report and Recommendation.

Respectfully submitted,

Victor E. Bianchini
United States Magistrate Judge

Dated:   November 16, 2009

      Syracuse, New York

**V. ORDERS**

Pursuant to 28 USC §636(b)(1), it is hereby ordered that this Report & Recommendation be filed with the Clerk of the Court and that the Clerk shall send a copy of the Report & Recommendation to all parties.

**ANY OBJECTIONS to this Report & Recommendation must be filed with the Clerk of this Court within ten(10) days after receipt of a copy of this Report & Recommendation in accordance with 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, as well as NDNY Local Rule 72.1(c).**

**FAILURE TO FILE OBJECTIONS TO THIS REPORT & RECOMMENDATION WITHIN THE SPECIFIED TIME, OR TO REQUEST AN EXTENSION OF TIME TO FILE OBJECTIONS, WAIVES THE RIGHT TO APPEAL ANY SUBSEQUENT ORDER BY THE DISTRICT COURT ADOPTING THE RECOMMENDATIONS CONTAINED HEREIN.** Thomas v. Arn, 474 U.S. 140 (1985); F.D.I.C. v. Hillcrest Associates, 66 F.3d 566 (2d. Cir. 1995); Wesolak v. Canadair Ltd., 838 F.2d 55 (2d Cir. 1988); see also 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, and NDNY Local Rule 72.1(c).

Please also note that the District Court, on *de novo* review, will ordinarily refuse to

14

consider arguments, case law and/or evidentiary material *which could have been, but were*

*not*, presented to the Magistrate Judge in the first instance. See Patterson-Leitch Co. Inc.

v. Massachusetts Municipal Wholesale Electric Co., 840 F.2d 985 (1st Cir. 1988).

SO ORDERED.

November 16, 2009

Victor E. Bianchini
United States Magistrate Judge